**Raul MONTALVO, Movant,**

**v.**

**UNITED STATES of America, Respondent.**

**Nos. 00 Civ. 6675(JGK), 96 CR. 884–01(JGK).**

United States District Court, S.D. New York.

Oct. 29, 2001.

Scott R. Dunning, Akron, OH.

Cynthia A. Jeffrey, Cleveland, OH.

Kathryn A. Belfance, Akron, OH.

### OPINION AND ORDER

KOELTL, District Judge.

The petitioner, Raul Montalvo, moves pro se under 28 U.S.C. § 2255 to correct his sentence, which was entered pursuant to his guilty plea to one count of interference with commerce by threats or violence in violation of 18 U.S.C. §§ 1951 and 2. The petitioner seeks to transform a 73–month sentence, which commenced when the judgment was entered on August 13, 1997, into a 121–month sentence backdated to begin on June 24, 1993. For the reasons set forth below, the motion is denied.

### I.

On April 16, 1997, the petitioner pleaded guilty pursuant to a written plea agreement (the "Plea Agreement") to one count of interference with commerce by threats or violence in violation of 18 U.S.C. §§ 1951 and 2. The factual basis for the plea was a robbery of a commercial establishment that the petitioner took part in on January 27, 1992.

By the time of his indictment, the petitioner was already serving a state court sentence for a separate robbery, in the second degree, arising out of different circumstances and involving different victims. (*See* Plea Agreement at 2–3.) The state court sentence had a term of 6 to 18 years, and commenced on June 24, 1993, the date of the petitioner's arrest.

On July 31, 1997, the Court held a sentencing hearing on the petitioner's federal conviction. At the hearing, the Court explained that the petitioner's federal offense warranted a total offense level of 27 and that the petitioner had a criminal history category of 2, thus yielding a sentencing range of 78 to 97 months. (*See* Transcript dated July 31, 1997 ("Sent.Tr."), at 5.) The Court then analyzed how the prior state court sentence should be considered in determining whether the federal sentence was to run concurrently, partially concurrently, or consecutively to the undischarged term of the state court conviction. The Court began by noting that the petitioner's Guidelines Sentencing Range would have been 121 to 151 months if the

Court had sentenced the petitioner on the prior state court offense at the same time, treating it as a federal offense. The Court also indicated that it would have chosen the lowest end of this range, and observed that the petitioner had already served approximately 48 months on his state court conviction. Citing the 1997 United States Sentencing Guidelines Manual ("U.S.S.G.") § 5G1 .3(c), the Court indicated its view that the petitioner should be sentenced to 121 months minus 48 months, or 73 months, of imprisonment, which was to run concurrently with the undischarged term of his state court sentence. See U.S.S.G. § 5G1.3 (1997 ed.).[1]

The Court also explained that it should not sentence the petitioner to 121 months of imprisonment, backdated to begin and to run concurrently with the entire term of the petitioner's state court sentence. (See Sent.Tr. at 6.) The Court asked the parties for any arguments or objections. Neither party objected, and both agreed with the Court's analysis. (See Sent.Tr. at 19–20.) The Court then reviewed its sentencing analysis a second time, and asked if there were any further objections. (See Sent.Tr. at 19–20.) After receiving none, the Court sentenced the petitioner to the term indicated, along with an order of restitution in the amount of $200,000, a fine of $12,500, and a special assessment of $50. The Court entered judgment on August 13, 1997.

The petitioner subsequently appealed, challenging only the fine and order of restitution. The Court of Appeals rejected these challenges, see United States v. Montalvo, 159 F.3d 1349 (2d Cir .1998), and the petitioner petitioned the Supreme Court for a writ of certiorari. On October 19, 1998, the Supreme Court denied this petition. See Montalvo v. United States, 525 U.S. 954, 119 S.Ct. 387, 142 L.Ed.2d 320 (1998).

The petitioner spent the next twenty-two months incarcerated without raising any challenges to his sentence. On August 18, 2000, the petitioner then filed the present § 2255 motion.[2] In it, he argues for the first time that he should have been sentenced to 121 months of imprisonment, backdated to begin and to run concurrently with his entire state court sentence, rather than to the 73–month term he received and that ran concurrently with the undischarged term of his state court sentence. The petitioner argues that as a result, he has been deprived of good time credit against his federal sentence for the approximately 48–month period he spent in custody before his federal sentence began. The petitioner argues that the Court should modify his sentence to afford him this credit and ensure that his sentence is aligned with that of another criminal defendant, Jose Arana. Arana also pleaded guilty to one count of interference with commerce by threats or violence in violation of 18 U.S.C. §§ 1951 and 2 in a relat-

---

1. The Court applied the 1997 Guidelines, because they were in effect at the time of sentence. The Court also considered the 1991 Guidelines, however, which were in effect at the time of the offense, and concluded that they did not result in any different sentence. (See Sent.Tr. at 5, 14.)

2. The petition is dated August 18, 2000 and was received by the Court's Pro Se Office on August 21, 2000. Thus, the earliest date that the petitioner could have filed the petition is August 18, 2000. See Adeline v. Stinson, 206

F.3d 249, 251 n. 1 (2d Cir.2000) (per curiam) ("When a prisoner is proceeding pro se, ... federal courts generally consider his or her petition for habeas corpus to have been filed as of the date it was given to prison officials for forwarding to the court clerk."); cf. also Houston v. Lack, 487 U.S. 266, 270–76, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (pro se prisoner's notice of appeal is deemed to have been filed upon delivery to prison authorities for forwarding to court clerk).

ed case, and was sentenced to a 121–month backdated term, by a different judge in accordance with a different plea agreement. (*See* Presentence Report at 5.)

## II.

■ Section 2255 motions are governed by a one-year statute of limitations. *See* 28 U.S.C. § 2255. This one-year period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. The petitioner's conviction became final on October 19, 1998, when the Supreme Court denied his petition for a writ of certiorari. *See Green v. United States,* 260 F.3d 78, 84 (2d Cir. 2001); *United States v. Leon,* 203 F.3d 162, 163 (2d Cir.2000). The petitioner filed his present § 2255 motion on August 18, 2000, almost twenty-two months later. The petitioner thus filed this motion over one year after his judgment became final.

The petitioner argues that his one-year period should be deemed to have begun not when his judgment became final but sometime on or after August 18, 1999, thus rendering his motion timely, because he could not in the exercise of due diligence have discovered the facts supporting his claim until sometime on or after that date. *See* 28 U.S.C. § 2255. The petitioner notes, in particular, that he is proceeding pro se and claims that he needed time to "investigate on his own to acquire proof to substantiate his claim of not being equally treated as had been agreed[ ] upon during the plea negotiation." (Pet's Rep. at 3.) However, the only facts needed to bring the present motion were facts about the petitioner's sentence. The Court explained this sentence to the petitioner in detail at his sentencing on July 31, 1997. The Court also explained its sentencing rationale, and both parties agreed that the sentence reflected a proper application of the Sentencing Guidelines. (*See* Sent.Tr. at 5–9, 19–20.) The petitioner was also represented by counsel at his sentencing and on appeal, and he thus had all the resources necessary to review or obtain the facts and transcripts concerning his sentence at those times. *See, e.g., Felix v. Artuz,* No. 98 Civ. 6703, 2000 WL 278077, at *3 (S.D.N.Y. Mar.14, 2000) ("Petitioner had full access to the transcripts while they were in the custody of his … attorney; and during that period, he should have been able to discover the factual predicate for any claims he now wishes to make before this Court.").

The petitioner argues that he also needed to obtain information about Arana's sentence to raise the present challenge. Facts about the sentence of a different defendant in a different case are not, however, relevant to whether the defendant's sentence was correct. Moreover, Arana was sentenced on December 6, 1995, before the petitioner was sentenced, and Arana's sentence was discussed in the Presentence Report, which the petitioner acknowledged reading before his own sen-

tencing. (*See* Presentence Report at 5; Sent.Tr. at 10 .) Moreover, both the Court and the petitioner's counsel noted Arana's sentencing at the time of the petitioner's sentence. (*See* Sent.Tr. at 15, 20.) Furthermore, by letter dated July 27, 1999, approximately thirteen months before the petitioner filed this motion, the Bureau of Prisons provided the petitioner with a full calculation of his sentence and his good time calculations (*See* Aff. of Raul Montalvo dated Oct. 19, 2000 ("Montalvo Aff.") at Ex. 7.) The petitioner thus knew precisely what good time credit he was receiving at that time. In sum, the petitioner knew all of the factual predicates for his present motion more than a year before he filed it.[3]

The petitioner does not present any other argument for beginning his one-year filing period on or after August 18, 1999. The petitioner's motion is thus time-barred and should be denied on this basis alone.

### III.

The petitioner also waived his right to challenge his sentence in his Plea Agreement. The petitioner agreed, more specifically, that he would "neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, any sentence within or below the stipulated Guidelines range.…" (Plea Agreement at 6.) This waiver was to be effective "even if the Court employs a Guidelines analysis different from that stipulated to herein." (*Id.* at 6.)

It is undisputed in this case that the 73 month sentence that the Court imposed, together with the 48 months that had al-

ready expired on the petitioner's state court sentence, yielded a combined sentence of 121 months of imprisonment for his two robbery convictions. This term was on the low end of the stipulated Guidelines range, which was 121 to 151 months, to run concurrently with the unexpired term on his state court conviction with credit for the expired term of that same sentence. (*See Id.* at 4.) Even if the Court's analysis differed in some ways from that set forth in the Plea Agreement, the resulting sentence was thus unappealable under its terms.

The sentence would be unappealable even if the petitioner's good time argument were correct. A federal inmate can acquire at most 54 days of good time credit per 12 months of incarceration, *see* 18 U.S.C. § 3624(b)(1), and the petitioner could thus have obtained at most 216 days of good time credit during his initial 48 months in state prison. The Court, by contrast, sentenced the petitioner to the equivalent of a term that was shorter than the maximum stipulated in the Plea Agreement by 30 months, or approximately 913 days. The petitioner's sentence was thus well within the stipulated Guidelines Range even if the possibility of good time credit for his state court sentence should somehow be considered. The petitioner has thus waived any right to bring his current challenge under § 2255.

### IV.

In any event, the argument raised by the petitioner is not cognizable in a § 2255 motion. It is well established in this Circuit that absent a complete miscar-

---

3. While the petitioner asserts that he asked his attorney to investigate the matter of good time credit, he does not assert that he received ineffective assistance of counsel. (*See* Montalvo Aff. at 2.) Moreover, the petitioner personally had all of the information necessary to raise this claim more than one year prior to filing the present motion, and his counsel could not be faulted for failing to raise a claim that, as discussed below, has no merit. *See* Sections III–V, *infra*.

riage of justice, nonconstitutional sentencing errors that have not been raised on direct appeal may not be reviewed in a § 2255 motion. *See, e.g., Valente v. United States,* 111 F.3d 290, 292 (2d Cir.1997) (per curiam); *Graziano v. United States,* 83 F.3d 587, 589–90 (2d Cir.1996) (per curiam). The petitioner does not raise any constitutional challenges or allege any complete miscarriage of justice. He argues only that the Court had the discretion to sentence him in an alternative way, and should have exercised this discretion differently, so as to align his sentence with Arana's. (*See* Pet's Br. at 5, 8–9.) The petitioner did not raise this argument on direct appeal, and cannot now raise it in a § 2255 motion.

## V.

█ Finally, there was no error in this case. The analysis the Court used to sentence the petitioner was eminently proper. The Court determined the correct Guidelines Range of 78 to 97 months for the petitioner's federal offense, and correctly decided to have it run concurrently with the undischarged term of the defendant's state court sentence pursuant to § 5G1.3(c). (*See* Sent.Tr. at 14.) In addition, and without departing downward, the Court reduced the petitioner's sentence 5 months below the 78–month minimum for his federal offense to take account of time that he had served in state custody.[4] The petitioner's argument that the Court should have "backdated" his sentence to run from the date he was arrested for his

state offense is simply wrong. In *United States v. Gonzalez,* 192 F.3d 350 (2d Cir. 1999) (per curiam), the Court of Appeals held that it would be improper to backdate a concurrent sentence under § 5G1.3, rather than subtracting the time spent on a prior conviction from the federal sentence, as the Court did here. *See id.* at 355.

The petitioner argues that the Court should have referred to application note 3, which explains how to apply § 5G1.3(c), rather than application note 2, which governs § 5G1.3(b). The Court did determine the petitioner's concurrent sentence under § 5G1.3(c), and the petitioner is correct that this subsection is governed by application note 3. These facts do not, however, affect the present analysis. Section 5G1.3(c) merely gives courts the power to fashion hybrid sentences, which are concurrent, partly concurrent, or consecutive to a prior undischarged term of imprisonment, so as to achieve a reasonable punishment in cases where a defendant has already been incarcerated for a prior conviction that was not taken into account in calculating the offense level for the new offense. The Court made the petitioner's entire sentence run concurrently to the undischarged term of his state court sentence. The Court referred to application note 2 only by analogy, to reduce the petitioner's sentence by another 5 months. The petitioner thus received the most favorable application of § 5G1.3(c) in his circumstances.

What the petitioner seeks is essentially federal good time credit for time spent in

---

**4.** *See* U.S.S.G. § 5G1.3(b), cmt. n. 2 (1997 ed.) (For example: "The court determines that a sentence of 13 months provides the appropriate total punishment. Because the defendant has already served six months on the ... state charge as of the date of sentencing on the instant federal offense, a sentence of seven months, imposed to run concurrently with the three months remaining on the de-

fendant's state sentence, achieves this result. For clarity, ... the sentence imposed is not a departure from the guideline range because the defendant has been credited for guideline purposes under § 5G1.3(b) with six months served in state custody that will not be credited to the federal sentence under 18 U.S.C. § 3585(b).").

state custody, before his federal sentence even began. Nothing in § 5G1.3(c) or its application notes suggests that this would be a proper sentencing determination.

## V.

Each of the above four reasons requires denial of the petitioner's petition for a writ of habeas corpus pursuant to 28 U.S .C. § 2255. The Court declines to issue a certificate of appealability pursuant to § 28 U.S.C. § 2253 because the petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Clerk of the Court is directed to enter judgment dismissing the petition and closing this case.

**SO ORDERED.**